CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 16 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARK TODD SHOWALTER, | ) | CASE NO. 7:15CV00106 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| MR. LEE, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Plaintiff Mark Todd Showalter, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison mental health professionals were not providing adequate treatment for his serious mental illnesses and pain.[1] Showalter did not prepay the $400 filing costs for this lawsuit as normally required for an inmate litigant with three "strikes" under 28 U.S.C. § 1915(g). Instead, Showalter argued that the § 1915(g) exception to prepayment, upon a showing of imminent danger of physical harm, should apply to his mental health treatment claims. Showalter also filed a motion for interlocutory injunctive relief. By court order, the Office of the Attorney General ("OAG") of Virginia has responded to Showalter's allegations of imminent danger with evidence about his mental health condition and treatment. On this record, the court concludes that Showalter is not in imminent danger of physical harm as a result of any official conduct and, therefore, denies his application to proceed under § 1915(g) and dismisses his complaint without prejudice.

I

Showalter's complaint alleged the following sequence of events. On January 12, 2015, Showalter stopped taking his prescription drugs for severe mental illnesses, based on his belief

---

[1] In his complaint, Showalter sought preliminary and permanent injunctive relief regarding his mental health treatment, including an order that he be transferred to MCTC. He has also filed an amended complaint, adding claims for monetary relief, and a motion for appointment of counsel.

that staff at River North Correctional Center ("RNCC") were poisoning his medications. Without his medications, Showalter had a "severe mental health breakdown," starting on January 14, 2015. He saw blood on the walls and floor and people trying to shoot him, and he heard voices telling him that inmates and staff are trying to kill him, or telling him to kill others or himself. He made written and verbal requests to his mental health treatment team of psychologists, asking to talk to a psychiatrist and to be committed to Marion Correctional Treatment Center ("MCTC") for mental health care. For unspecified reasons, Showalter does not believe MCTC will poison his medications.

As a result of his recent alleged mental health troubles at RNCC, Showalter claims:

> I have had ongoing pain in my head because of all of this. I've had chest pains a lot because of all of this. I've had ongoing delusions/hallucinations/seeing things and hearing voices. I believe all staff at RNCC and all of the Defendant(s), as well as all of the prisoner's (excluding one) at RNCC are trying to kill me. I believe all staff of RNCC have poisoned the medication that is brought to me (I've not taken any since about Jan. 12, 2015).

(Compl. 2, ECF No. 1.) He names as defendants three psychologists (Sturdivant, Haga, and Cahn) and a mental health supervisor (Lee) at RNCC, and the mental health supervisor for the VDOC (Malone).

In response to Showalter's allegations of imminent danger, the OAG submitted the affidavit of R. M. Sturdivant, a psychology associate at RNCC, who has reviewed Showalter's medical needs and course of treatment there. Sturdivant states his professional opinion that Showalter's recent behavior and his filing of this lawsuit were motivated by his desire to return to MCTC, the facility where he was incarcerated before his transfer to RNCC, or by his intent to be assigned to a cell with a particular, prior cell mate.

MCTC is an acute care facility licensed by the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services and is designed to provide mental health

2

treatment to involuntarily committed mental health patients and/or offenders. The goal of treatment provided at MCTC is to stabilize a mental health patient so that he may be transferred to another appropriate facility. Showalter had spent some weeks at MCTC before his transfer to RNCC on March 11, 2014.

When he arrived at RNCC, Showalter had been prescribed 2 mg of Risperdal, an anti-psychotic medication, to be taken once daily. He was in general population at RNCC from March 11 until April, 2014, when he was moved to restrictive housing after an altercation with his cell mate. On May 30, Showalter was moved back to general population and remained there without any mental health complications for more than seven months.

Beginning in mid-January 2015, however, Showalter periodically refused to take his daily medication. On January 14, 2015, Showalter threatened to kill Warden Wright and Dr. Lee, and as a result, was placed on safety precautions in restrictive housing. Sturdivant's records indicate that Showalter took his medication on January 28 and 29, February 2, 7, and 8, and March 5 and 18, 2015, but refused to take the medication on all other days during that period. Showalter signed and dated his § 1983 complaint on March 9, 2015.

Sturdivant states that the half life of Risperdal is less than one day, meaning that the body metabolizes it completely during that time. Despite Showalter's sporadic doses of the medication and its short half life, Sturdivant did not observe a significant difference in Showalter's interactions with him during this period as compared to the time when Showalter was regularly taking his medication.

After receiving notice of Showalter's § 1983 complaint in mid-March 2015, his RNCC treatment team placed Showalter on suicide precautions for forty-eight hours to determine if he was, in fact, in danger of harming himself, as alleged in the lawsuit. During that time,

3

"Showalter did not exhibit any signs of acute distress, suicidal/homicidal thoughts, or statements that he was going to kill himself." (Sturdivant Affid. ¶ 10, ECF No. 16-1.) Sturdivant, Dr. Lee, and other mental health staff consulted and decided that Showalter could be safely released from suicide precautions.

Sturdivant states that Showalter is currently in restrictive housing on mental health observation status. According to VDOC policy, he is monitored regularly by security staff, mental health staff, and medical staff. Typically, Showalter refuses to respond when staff attempt to interview him, however. In this status, Showalter has no direct contact with other offenders, so is not in danger of being assaulted by others.

Sturdivant states that in his experience, mental disorders do not typically cause the physical symptoms that Showalter has claimed. Sturdivant is also not aware of evidence that Showalter has suffered from an anxiety or panic attack since his arrival at RNCC, as he claims. Sturdivant states his professional opinion that Showalter's claims that staff are poisoning his medications, that other inmates (except one) may assault him, and that he may commit suicide or kill others, all "appear to be his attempts to manipulate the [VDOC] to transfer Mr. Showalter to another facility." (Id. ¶13.) Sturdivant states: "This type of behavior is reflective of long standing behavioral and personality traits." (Id.)

## II

The Prison Litigation Reform Act of 1995 substantially amended the in forma pauperis statute, 28 U.S.C. § 1915. The purpose of the Act was to require all prisoner litigants suing government entities or officials to pay filing fees in full, either through prepayment or through installments withheld from the litigant's inmate trust account. § 1915(b). Section 1915(g) denies the installment payment method to prisoners who have "three strikes" — those prisoners

4

who have had three previous cases or appeals dismissed as frivolous, malicious, or for failure to state a claim, unless the three-striker inmate shows "imminent danger of serious physical injury." § 1915(g).

Showalter has brought such actions or appeals on three or more prior occasions. See Showalter v. Johnson, Case No. 7:08cv00276 (W.D. Va. Oct. 20, 2009) (dismissed under 28 U.S.C. § 1915A(b)(1) as frivolous and for failure to state a claim); Showalter v. Virginia Criminal Sentencing Commission, Civil Action No. 7:96cv00127 (W.D. Va. February 8, 1996) (dismissed as frivolous under 28 U.S.C. § 1915(d)); and Showalter v. Director, Department of Corrections, Civil Action No. 7:96cv00113 (W.D. Va. February 6, 1999) (dismissed as frivolous under 28 U.S.C. § 1915(d)). Accordingly, Showalter may proceed in forma pauperis (without prepayment of the filing fee) only if he can show that he faces imminent danger of serious physical injury. § 1915(g).

The "imminent danger" exception to § 1915(g)'s "three strikes" rule must be construed narrowly and applied only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate" to the alleged official misconduct. Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir. 2002). The prisoner must be seeking relief from and demonstrate a danger that is imminent at the time he files the complaint. Chase v. O'Malley, 466 F. App'x 185, 186 (4th Cir. 2012) (citing Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (finding that exception "focuses on the risk that the conduct complained of threatens continuing or future injury, not whether the inmate deserves a remedy for past misconduct"); Banos v. O'Guin, 144 F.3d 883, 885 (5th Cir. 1998)). The prisoner must make "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Id. at 186-87 (quoting Martin, 319 F.3d at 1050).

5

Numerous courts have concluded that where a three-striker inmate's allegations reflect that he has had access to medical care and simply disagrees with the opinions of the medical personnel who have examined him, he fails to satisfy the imminent danger requirement of 28 U.S.C. § 1915(g). See, e.g., See, e.g., Joyner v. Fish, No. 7:08CV00359, 2008 WL 2646691 (W.D. Va. July 3, 2008) (imminent danger not demonstrated when plaintiff had been given thorough medical treatment, never been denied doctor visit, and been advised to take medication but disagreed with opinions of medical professionals); Renoir v. Mullins, No. 7:06CV00474, 2006 WL 2375624 (W.D. Va. Aug. 15, 2006) (finding disagreement with diagnoses and prescribed treatment is not imminent danger of serious physical harm).[2] .

In light of Sturdivant's affidavit and Showalter's submissions, the court cannot find that Showalter has demonstrated any imminent danger of physical harm under § 1915(g), related to defendants' conduct as his mental health treatment team. The record indicates that defendants have continued to bring Showalter his medications, even though he has often refused to take them, and Showalter states no factual support for his speculative belief that someone is poisoning those medications. Defendants have also regularly monitored his mental health condition, responded to his complaint forms and grievances, and attempted to interview him about his symptoms. They implemented safety precautions and more intense monitoring when he fought with a cell mate and when he told the court he was suicidal and homicidal. Then, they removed those precautions when they saw no further symptoms of risk. Defendants, in their professional

---

[2] See also Brown v. Beard, 492 F.Supp.2d 474, 478 (E.D. Pa. June 27, 2007) (prisoner was not in imminent danger when disputing the quality of treatment he was receiving for various medical conditions); Watley v. Escobar, No. 4:09CV3003, 2010 WL 1643801 (N.D. Ohio April 22, 2010) (no imminent danger where plaintiff received medical treatment but disagreed with conclusions of medical personnel over pain medication and medical procedures); James v. Hunter, No. 08-0729-CG-B, 2009 WL 3052131, *3 (S.D. Ala. September 18, 2009) (disagreement with medical treatment provided does not satisfy § 1915(g) exception); Baugh v. Missouri Dept. of Corrections, No. 4:08CV01517 ERW, 2008 WL 4831783, *1 n. 1 (E.D. Mo. November 5, 2008) (no imminent danger where plaintiff admitted he was offered treatment for medical conditions but disagreed with offered treatment).

judgment, do not see symptoms indicating that Showalter's condition at this time warrants commitment to MCTC for the acute mental health care provided at that facility. At the most, Showalter disagrees with defendants' medical judgments, a circumstance that cannot support a finding of imminent danger under § 1915(g).[3]

### III

In conclusion, because Showalter has at least three "strikes" under § 1915(g), has not prepaid the filing costs, and has not demonstrated that he is in imminent danger of physical harm, the court denies Showalter the opportunity to proceed in forma pauperis and summarily dismisses the action under § 1915(g) without prejudice. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to the Office of the Attorney General of Virginia.

ENTER: This 16th day of April, 2015.

_____
Chief United States District Judge

---

[3] On the same bases, Showalter's allegations fail to provide insufficient grounds for interlocutory injunctive relief. See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

7